

**IN THE**
**TENTH COURT OF APPEALS**

---

**No. 10-19-00395-CV**

**IN *RE* DAYBREAK COMMUNITY SERVICES TEXAS, LLC**
**AND DAYBREAK COMMUNITY SERVICES, INC.**

---

**Original Proceeding**

---

## DISSENTING OPINION

---

What happened to Alice is a crime. Mack committed the crime. Because of Mack's mental defect, it appears he will not be prosecuted for the crime. The persons and entities to whom their care was entrusted have been sued for failing to meet the standard of care for a health care provider. Alice's guardian, therefore, Alice, wants to punish those entities in addition to recovering economic and compensatory damages. Alice wants to recover exemplary damages.

Net worth of an entity is not relevant if there is no possibility of obtaining exemplary damages. But the net worth of an entity is relevant to determine the amount of exemplary damages to be awarded. If and when she gets to that issue, Alice wants to

be prepared to show the jury how much these entities are worth so that the jury will know how much to award as exemplary damages to punish them for their failure to protect Alice from the crime committed against her. She sought discovery of the net worth of these entities. The entities resisted. There was a hearing. There was a pleading amended. There was a ruling. The trial court ordered the entities to produce certain net worth information in response to the discovery request.

The Daybreak entities have brought this mandamus proceeding seeking a writ of mandamus to prevent the discovery of their net worth. We are not yet to the issues of whether Alice can prove by clear and convincing evidence the elements of her exemplary damages claim. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 41.003(b). We are only at the discovery stage "of Evidence of Net Worth for [an] Exemplary Damages Claim." *See id*. § 41.0115.

The relevant statute related to the discovery of net worth provides that "[a] trial court may authorize discovery of evidence of a defendant's net worth if the court finds in a written order that the claimant has demonstrated a substantial likelihood of success on the merits of a claim for exemplary damages. Evidence submitted by a party to the court in support of or in opposition to a motion made under this subjection may be in the form of an affidavit or a response to discovery." TEX. CIV. PRAC. & REM. CODE ANN. § 41.0115(a).

Interestingly, the legislature specifically limited what this Court could consider when reviewing a trial court's decision. The statute provides that "[w]hen reviewing an order authorizing or denying discovery of net worth evidence under this section, the reviewing court may consider *only the evidence submitted by the parties to the trial court in support of or in opposition to the motion* described by Subsection (a)." *Id*. § 41.0115(c) (emphasis added).

Because of the restrictions on what we can consider in our review of the trial court's ruling, much of the 883-page record submitted by the entities is at best unnecessary; and at worst, it is distracting. First, there was no evidence submitted during the course of the August 23, 2019 hearing. There was only argument. Thus, we turn to the motion for discovery of net worth and the response. This is further complicated by the fact that most of the discovery motion, Plaintiff's Second Motion to Compel with Appropriate Sanctions and Motion to Allow Discovery of Net Worth, was directed towards alleged discovery violations and for sanctions, as were the related attachments to the motion, and not to the discovery of net worth. As to the discovery of net worth, the focus was primarily on showing what the corporate and individual defendants knew about Mack, his history of violence and sexual proclivities, and how it was gross negligence to allow him to be in a room with Alice without adequate supervision. Moreover, there was no effort to show if any of the individual defendants or which, if either, of the separate corporate defendants could be criminally liable for Mack's conduct,

specifically his aggravated sexual assault on Alice. And, the evidence of an exemption to the general rule of a prohibition must be specific as to which corporate entity, if either, could be held criminally liable for Mack's conduct for that entity to have to produce net worth information. There was no evidence that we can consider for this issue to show who the individual defendants worked for as is necessary to establish not only the vicarious liability for damages, but their corporate liability for the crime.

Like the plaintiff's motion, the response of the defendants, Defendants' Response to Plaintiff's Motion to Compel and to Allow Discovery of Net Worth, primarily addressed the alleged discovery violations and for sanctions, and not the discovery of net worth.

While the defendants, collectively, resisted net worth discovery on three grounds, the only one directly argued in this proceeding is the bar on recovery of exemplary damages and, therefore, the relevance of net worth data if the plaintiff's damages are based on the criminal act of another. TEX. CIV. PRAC. & REM. CODE ANN. § 41.005(a). As relevant to the exercise in which we are currently engaged, that being the search of the record for evidence we can rely upon to review the trial court's order compelling the net worth discovery, the defendants reference only Plaintiff's Original Petition. That petition has now been twice amended. For the sake of argument, we will give the trial court the benefit of possible reliance on the original and both amended petitions, if it helps in affirming the trial court's discovery order. It does not. All three petitions, taken

individually or collectively, establish that this medical malpractice case is, at its core, about Daybreak's failure to protect Alice from the aggravated sexual assault committed by another client, Mack. But beyond that, we really have nothing that helps us with the application of section 41.005(a) of Texas Civil Practice and Remedies Code and its exemptions. TEX. CIV. PRAC. & REM. CODE ANN. § 41.005(a) and (b).

Both parties have initially struggled with whether Mack's conduct was a "criminal act" within the meaning and purpose of the statutory bar to exemplary damages. The Court, assumes "without deciding that Mack's actions constituted an assault or other criminal act." I need not assume. Due to Alice's mental defect, she could not consent to sexual intercourse. This is true even though she had not yet been adjudicated mentally incompetent and a guardian appointed over her person and estate. To suggest that it could have been consensual intercourse borders on the absurd for both parties.

If it was legally consensual from Alice's perspective, then she would be criminally liable for having sex with Mack if it is determined that due to his mental incapacity, he could not legally consent to having sex with her. Moreover, if the plaintiff prevails in this proceeding for the discovery of net worth due to this Court's reliance on the defendants' argument that it was not criminal because it was consensual, plaintiff will have won the battle but lost the war. This is because having prevailed on the argument of the consensual nature of his client's action that it was not a criminal act, the plaintiff would then be judicially estopped from obtaining any damages on the theory that the

defendants failed to protect her from Mack because she consented to Mack's conduct.

So, getting past that absurd argument brings us to the real crux of the issue. If Mack had sex with Alice, was it a criminal act? The legal question in this issue is whether Mack's actions are criminal even if he cannot be held criminally liable for the act due to his mental defect; in essence, being insane within the meaning of the relevant provision of the Texas Penal Code. TEX. PENAL CODE ANN. § 8.01; *see Graham v. State*, 566 S.W.2d 941 (Tex. Crim. App. 1978).

I will not, here in this dissenting opinion, engage in a legal dissertation of whether a crime is committed if there is no one mentally there to commit it. But I will suggest to the reader and the parties that a good place to start, and possibly end, the analysis is with *Graham v. State*, 566 S.W.2d 941 (Tex. Crim. App. 1978). Based on *Graham*, in addition to other research, I have satisfied myself that Mack's conduct, and as it is relevant to the statute at issue, was a "criminal act." He would probably raise an insanity defense if he were charged with the crime. But even if found not guilty by reason of insanity, that does not mean a crime was not committed. It simply means that Mack will not be held criminally liable for it.[1]

The argument that it is still a crime, and thus a "criminal act" is strengthened by Texas Penal Code section 7.03. In evaluating the potential liability of a particular actor,

---

[1] I note that there is a strong argument to be made that Mack understood his conduct was "wrong" within the meaning of Texas Penal Code Section 8.01(a) because he locked the door to the bathroom.

based on the conduct of another, it is not a defense that the person for whose conduct that actor is criminally responsible could not be or has not been tried or convicted of the crime. TEX. PENAL CODE ANN. § 7.03(2).

So, having made the determination that the harm to Alice was the result of a "criminal act of another," I now move to the next question – whether there is an exemption to the statutory bar of awarding exemplary damages for this "criminal act of another." It is in the analysis of the possible exemptions to the bar that the failure of proof and the limitation on what we can review is fatal to the plaintiff's discovery of net worth data at this time. There is simply no basis upon which to hold, as the Court does, that any of the individual or corporate defendants could be held criminally responsible for Mack's conduct, which would get the plaintiff to the exemption under section 41.005(b)(2) of the Texas Civil Practice and Remedies Code. The only basis upon which the Court relies is a bare allegation of a label regarding the title or position of one of the individual defendants.[2] The largest gap in even this mere allegation is that there is no evidence we can consider of which corporate entity the individual defendant worked for, and why that single allegation of a title/status would require compelling the net worth data of multiple corporate entities/defendants.

---

[2] Even if we could rely upon the deposition testimony referenced in the Court's opinion, it is clear to me that the individual defendant is not of the requisite managerial level to hold one of the entities criminally liable for Mack's conduct. Moreover, it appears he only works for one of the entities and is certainly not at an executive level in either, or both, of those entities sufficient to hold the entity criminally liable.

Based on the foregoing, I would conditionally issue a writ of mandamus compelling the trial court to withdraw its order compelling the production of net worth data.[3] Because the Court denies the petition and thus allows the discovery, I respectfully dissent.

TOM GRAY
Chief Justice

Dissenting opinion delivered and filed February 26, 2020



---

[3] I note this would not be with prejudice. The plaintiff is certainly entitled to attempt to marshal the evidence necessary to show criminal liability for Mack's acts on one, or both, of the corporate defendants. But on this record, the plaintiff has failed to do that. Moreover, this issue does not resolve whether, at trial, the plaintiff will be entitled to an award of exemplary damages without sufficient proof of the criminal liability of at least one of the corporate entities.